UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, O'Brien and Senior Judge Frank
Argued by teleconference


RICHARD ALLEN BROWN

MEMORANDUM OPINION* BY
v.      Record No. 0554-19-1          JUDGE ROBERT P. FRANK
JULY 14, 2020

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Richard Clark, Senior Assistant Public Defender, for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Richard Allen Brown, appellant, was convicted in a bench trial of aggravated sexual

battery, in violation of Code § 18.2-67.3(A)(3); rape, in violation of Code § 18.2-61; and forcible

sodomy in violation of Code § 18.2-67.1.[1]  On appeal, appellant challenges the introduction of a

1989 conviction for rape.[2]  For the reasons stated, we affirm those convictions.

BACKGROUND

Appellant met J.C.'s[3] mother in 2014 after he was released from prison in Pennsylvania.

He later moved to Virginia Beach with J.C.'s mother, J.C., and J.C.'s three siblings.  J.C., then

fourteen years old, had her own bedroom in their house in Virginia Beach.  On one occasion,

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant also was convicted on his guilty plea to taking indecent liberties with a minor, in violation of Code § 18.2-370.1.  That conviction is not subject to this appeal.

[2] Appellant does not contest the sufficiency of the evidence.

[3] We use the child's initials to protect her identity.

while playing with her younger brother and sister, J.C. was hiding in a closet in her mother's room when appellant came into the closet and kissed her on the mouth. When J.C. attempted to leave, appellant grabbed her and forced her onto the bed in her mother's room. Appellant rubbed J.C.'s vagina over her clothing. He released J.C. when he heard her mother come home.

In another incident, appellant came into J.C.'s room and laid in her bed with her. J.C. recalled feeling appellant's "pot belly" against her back as he touched J.C.'s stomach and chest under her pajamas. Appellant then moved J.C. onto her back, removed her pants and underwear, and put his penis into her vagina. J.C. described feeling scared and in pain. J.C. stated that appellant went "back and forth" until he ejaculated into his hand. Appellant left the room, then returned and told J.C. not to tell anyone. He said that if she told anyone, she would get in trouble and her mother would get mad at her. He assured J.C. that everything would be okay, and he forced her to take a shower.

Appellant raped J.C. many times when she was fourteen and fifteen years old. J.C. testified that she could not count the number of times, but "[i]t's a lot."[4] J.C. eventually told her sister about the rapes,[5] but she did not tell her mother because appellant said that J.C. would be sent away and his relatives would fight her mother if J.C. reported the rapes. Even when the family moved to another house in Virginia Beach, the rapes continued. J.C. testified that appellant performed oral sex on her four or five times. He once showed her a video depicting a woman performing oral sex on a man and asked if she would do that, but she refused. J.C. testified that she never wanted to have sex with appellant.

---

[4] The Commonwealth indicted appellant for offenses occurring between December 20, 2014 and February 29, 2016.

[5] J.C.'s sister testified that J.C. had told her that appellant had raped her multiple times.

- 2 -

In early 2016 the family went on vacation in Florida, following appellant's marriage to J.C.'s mother. Appellant raped J.C. in Florida. J.C. began feeling sick and ultimately learned she was pregnant. J.C. had an abortion; DNA analysis revealed that appellant had impregnated her. Initially, appellant denied having sexual contact with J.C. but later told the police he did have sex with her.

The Commonwealth filed a pretrial motion, with proper notice to appellant, to admit appellant's prior conviction for rape into evidence pursuant to Code § 18.2-67.7:1. In 1989, appellant was convicted of rape in Pennsylvania following a plea of no contest and remained in prison until 2014. Appellant objected that the prior conviction was not relevant because it was old and that the prejudicial effect outweighed the probative value. Appellant also pointed out that the fact patterns were different: in the Pennsylvania case, appellant was eighteen years old, and the victim was "a much older" adult, whereas in the instant case, appellant is the adult, and the victim is a child. The Commonwealth argued that the statute does not require the same fact pattern. The trial court commented that a conviction from 1989 "doesn't have a lot of relevance" to the proceeding, but the court admitted the conviction with the following statement: "I will let it in, but I will certainly weigh it with little weight since it was so long ago and it was not a similar circumstance."

Appellant testified in his defense, stating his sexual relationship with J.C. was consensual. He acknowledged that he began having sex with J.C. soon after he was released from prison and started dating J.C.'s mother in 2014.

Following closing arguments, the trial court convicted appellant of aggravated sexual battery, rape, and forcible sodomy. The trial court did not mention the prior rape conviction in its ruling but focused on appellant's intimidation of J.C. and his status as her stepfather.

This appeal follows.

ANALYSIS

On appeal, appellant challenges the admissibility of his 1989 Pennsylvania rape conviction. He contends that conviction is not relevant due to its remoteness in time and lack of similarity to the instant case, i.e., the fact patterns are different. Appellant claims that the prejudicial effect of the evidence outweighed any probative value.[6]

"Decisions regarding the admissibility of evidence lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion." Blankenship v. Commonwealth, 69 Va. App. 692, 697 (2019) (quoting Michels v. Commonwealth, 47 Va. App. 461, 465 (2006)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Id. (quoting Tynes v. Commonwealth, 49 Va. App. 17, 21 (2006)). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." Williams v. Commonwealth, 71 Va. App. 462, 487 (2020) (quoting Thomas v. Commonwealth, 62 Va. App. 104, 111-12 (2013)).

Code § 18.2-67.7:1(A) provides that "[i]n a criminal case in which the defendant is accused of a felony sexual offense involving a child victim, evidence of the defendant's conviction of another sexual offense or offenses is admissible and may be considered for its bearing on any matter to which it is relevant." The statute requires neither a time element, nor a similarity of facts. But the evidence is "subject to exclusion in accordance with the Virginia Rules of Evidence, including but not limited to Rule 2:403." Code § 18.2-67.7:1(E).

---

[6] He further asserts the introduction violates the general rule against admission of propensity character evidence. However, Code § 18.2-67.7:1 provides an exception in cases involving child sexual abuse to the general rule against propensity evidence, i.e., evidence that shows a defendant has a propensity to commit a particular crime. See Blankenship v. Commonwealth, 69 Va. App. 692, 700-01 (2019).

"'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. Even "remote or insignificant" facts are relevant if they "tend[] to establish the probability or improbability of a fact in issue." Va. Elec. & Power Co. v. Dungee, 258 Va. 235, 260 (1999). But "[r]elevant evidence may be excluded if: (a) the probative value of the evidence is substantially outweighed by (i) the danger of unfair prejudice, or (ii) its likelihood of confusing or misleading the trier of fact; or (b) the evidence is needlessly cumulative." Va. R. Evid. 2:403. "The responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court.'" Commonwealth v. Proffitt, 292 Va. 626, 635 (2016) (quoting Ortiz v. Commonwealth, 276 Va. 705, 715 (2008)).

While "all probative direct evidence generally has a prejudicial effect to the opposing party," the dispositive question is "whether the probative value of the evidence is substantially outweighed by its unfair or unduly prejudicial effects." Id. at 635-36 (quoting Lee v. Spoden, 290 Va. 235, 251 (2015)). Determining whether the evidence is unfairly prejudicial considers its tendency "to inflame the passions" of the jury or "to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." Id. at 636 (quoting Lee, 290 Va. at 251).

The term "unfair prejudice"

> speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt [or liability] on a ground different from proof specific to the [case elements]. "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.

Lee, 290 Va. at 251-52 (quoting Old Chief v. United States, 519 U.S. 172, 180 (1997) (construing the federal analogue to Va. R. Evid. 2:403).

Appellant cites Blankenship to support his position that the 1989 conviction should not have been admitted. Blankenship was charged with attempted rape, indecent liberties, and other offenses against a young child. He challenged the introduction of a North Carolina conviction for taking indecent liberties with a child, contending the trial court failed to apply the requisite balancing test to determine if the probative value of that conviction outweighed the prejudicial effect. In addition to the prior conviction order, the trial court had before it a police report detailing the underlying facts of the offenses and the indictment. We held that in conducting the balancing test, the trial court was entitled to also consider the indictment and the police report. Blankenship, 69 Va. App. at 702.

Contrary to appellant's argument, Blankenship does not impose additional requirements to Code § 18.2-67.7:1. It simply held that Code § 18.2-67.7:1 provides an exception to the general rule against evidence that shows the defendant has a propensity to commit a crime and that the trial court could consider the similarity of the offenses and remoteness in time in conducting the balancing test required by Rule 2:403(a). Id. at 700-01. Here, appellant contends that the trial court failed to conduct the requisite "balancing test." Appellant asserts that the trial court could not determine whether there were any similarities between the present offense and the prior conviction because only the conviction and sentencing orders were before the court.

Assuming, without deciding, the trial court erred in admitting the prior conviction, we are confident the error, if any, was harmless when considered in the context of the entire case. See Montgomery v. Commonwealth, 56 Va. App. 695, 704 (2010). "As appellant raises a challenge related to the admissibility of evidence, '[w]e examine this claim under the standard for non-constitutional harmless error.'" Schmuhl v. Commonwealth, 69 Va. App. 281, 307-08 (2018) (quoting Salahuddin v. Commonwealth, 67 Va. App. 190, 211-12 (2017)), aff'd, 298 Va. 131 (2019); see Carter v. Commonwealth, 293 Va. 537, 544-46 (2017) (applying a

non-constitutional standard to determine that any error was harmless that the trial court committed in refusing to admit certain evidence supporting a defendant's claim of self-defense).

The standard for non-constitutional error is established in Code § 8.01-678, which provides, in pertinent part:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.

"[A] harmless error analysis . . . [is not] simply a sufficiency of the evidence analysis." Williams v. Commonwealth, 32 Va. App. 395, 400 (2000) (*en banc*) (quoting Hooker v. Commonwealth, 14 Va. App. 454, 458 (1992)). "[I]t is 'the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless[.]'" Commonwealth v. White, 293 Va. 411, 420 (2017) (quoting United States v. Hasting, 461 U.S. 499, 509 (1983)).

In Clay v. Commonwealth, 262 Va. 253, 260 (2001), the Supreme Court of Virginia adopted the test for non-constitutional error expressed in Kotteakos v. United States, 328 U.S. 750 (1946).

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But, if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected . . . . If so, or if one is left in grave doubt, the conviction cannot stand.

Id. (quoting Kotteakos, 328 U.S. at 764-65).

Here, as the fact finder, the trial court gave little weight to the 1989 Pennsylvania conviction and in ruling on appellant's guilt, did not mention the earlier conviction. J.C.'s testimony was corroborated by a DNA test showing appellant had impregnated her. While first

denying any sexual contact with J.C., appellant later confirmed he had sex with her shortly after he was released from prison in 2014, when J.C. was fourteen years old. On cross-examination, J.C. testified that appellant gave her younger sister, K.C., money to go to the store so he could be alone with J.C. K.C. corroborated that statement.

Appellant explained to Detective Hosang that the only explanation for his DNA to be present was that J.C.'s mother "may have used a turkey baster and put it in there." Clearly, the trial court rejected that testimony. See Morris v. Commonwealth, 269 Va. 127, 133-34 (2005) (noting that a trial court could regard discredited testimony of defendant as evidence of guilt). The trial court, as the fact finder, accepted J.C.'s testimony as credible.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Flanagan v. Commonwealth, 58 Va. App. 681, 701-02 (2011) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138 (1995)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Id. at 702 (quoting Marable v. Commonwealth, 27 Va. App. 505, 509-10 (1998)). Further, the trial court noted when admitting the prior conviction that it merited "little weight," essentially according the prior conviction very little impact on the trial court's ruling.

We conclude that, based on the totality of the circumstances, when all is said and done, the introduction of the prior conviction did not influence the trial court. Any error was harmless. We affirm the decision of the trial court.

Affirmed.